No. 31,026

CLYDE A. FAUST, *Appellee*, v. WILLIAM ERBE, *Appellant*.

(23 P. 2d 484.)

Opinion filed July 8, 1933.

*John Madden* and *John Madden, Jr.,* both of Wichita, for the appellant.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith* and *C. H. Morris,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this action is by the defendant from a judgment rendered against him and in favor of the plaintiff for a commission on the sale of stock made by the plaintiff to one Reagan for the defendant, who was managing in Wichita the sale of stocks and securities for a Denver company, and had engaged the help of plaintiff in the enterprise as a contact man.

The action of plaintiff was for $840, or a six per cent commission on the sale of $14,000 of stock. The defendant in his answer denied any sale was made by plaintiff, denied the making of any oral agreement for the payment of six per cent commission, or agreement to have plaintiff introduce him to prospects, and denied that plaintiff was to receive any sum for any assistance in the sale of such stock.

The testimony of plaintiff only showed two items on which commission was claimed, one for $1,000 and the other for $4,000, both being sales made to Reagan. The case was tried to a jury which rendered a verdict for plaintiff for $302.80, which was six per cent commission on $5,000, and $2.80 interest thereon.

Appellant assigns numerous errors, the first of which is the failure of plaintiff to make demand for payment before commencing the action. We find no authority for a demand being necessary for commission, earnings or compensation, where the terms of the contract neither expressly nor impliedly require it as a condition precedent.

"No demand is necessary before bringing an action for the recovery of the price of articles sold and delivered, where the contract itself does not impose that condition. Such a debt is due when the transaction is complete." (1 C. J. 651. See, also, 13 C. J. 660, 729.)

The terms of the contract as set out in the petition certainly do not require a demand, and the answer does not in any way modify that contract. It simply denies its existence in any manner or form. Besides it has frequently been held that where the pleadings and

evidence show that a demand would have been useless, it is unnecessary.

"It is a general rule that where it is manifest that a demand would have been wholly futile, if made, it is unnecessary to go through the formality of making it." (*Altman v. Bank*, 86 Kan. 930, 932, 122 Pac. 874. See, also, *Bogle v. Gordon*, 39 Kan. 31, 17 Pac. 857, and 13 C. J. 661.)

Appellant urges that the evidence shows a lack of performance on the part of the plaintiff, especially as to the $4,000 item, and therefore no compensation would be due. The evidence tended to show the $4,000 item involved a promise of Reagan to invest money to be realized from two different sources: a receipt which he held for $4,000, and $10,000 of stock in the Nathan Jones company. The defendant testified that "After hard work the bank gained possession of the actual C. D." He further testified that the certificate of deposit for $4,000 was then indorsed by Mr. Reagan and mailed to the company at Denver. The evidence also showed the Denver company had the $4,000 and had never issued to Mr. Reagan any stock therefor, and that the Nathan Jones company had completely failed and nothing had been realized by plaintiff and defendant out of it toward investment for Mr. Reagan. It is true that the evidence of the defendant tends to connect these two items as if the proceeds of both would be necessary to complete and constitute the investment intended by Mr. Reagan, but there is sufficient evidence of the plaintiff to justify the jury in regarding them as separate items for investment. The continuing of the Denver company to hold the $4,000 without returning it to Mr. Reagan and his permitting it to be held, knowing the Nathan Jones investment was a failure, strengthens the position that the $4,000 item might be separable and intended for a separate investment. Nothing further is suggested in the testimony or brief of defendant that plaintiff could do to complete the $4,000 deal. When the plaintiff has done all it is possible for him to do toward performance and the remaining things to be performed are all to be done by the defendant and his company, namely, the issuance of the stock, failure or delay in completing the investment cannot be charged to the plaintiff.

Appellant insists that the contract to be enforceable should be definite and certain, and cites good authority in support of that doctrine, but the argument is based upon the evidence of the defendant as to the contract, which differed widely from that of the plaintiff,

which the jury chose to accept, and there was nothing indefinite about plaintiff's version of the contract.

The sixth instruction is claimed by defendant to be erroneous in that it did not, as a matter of law, inform the jury that the $4,000 item was incomplete and the plaintiff was not entitled to any commission thereon. This is the same proposition as heretofore considered, and we hold there was sufficient evidence, if accepted, to permit it to be a separable item and completed, as far as it was in the power of the plaintiff to complete it. The issuance of the stock to Reagan could only be done by the company the defendant represented. The court, in that instruction, told the jury it would have to determine from the evidence what the contract was and also the amount of stock that was actually sold to Reagan and the rate of commission thereon.

Much is said in the brief of appellant about the commission claimed by the plaintiff being unreasonable and about the first sale to Reagan being made three months after his being introduced to defendant by plaintiff. These are matters to be determined from the evidence, and where there is a claim of an oral contract, and upon sufficient evidence that theory is accepted by the jury, it is not a matter that can be changed or modified upon appeal.

It is further argued that the verdict was contrary to the evidence and contrary to law, that it shows prejudice and bias on the part of the jury, and that if any liability existed in favor of the plaintiff it was against the Denver company represented by the defendant instead of the defendant personally. We have not been persuaded in favor of any of these contentions; neither do we find error in the overruling of the demurrer to the evidence of the plaintiff nor in overruling the motion for new trial.

The judgment is affirmed.